# Henry Seelye

## v.

## Eliza Augusta Seelye.

*Separate Maintenance—Bill for — Sufficiency of Evidence to Maintain—Divorce.*

In order to sustain a bill for separate maintenance, it is not necessary in all cases that statutory grounds for a divorce should exist. It is sufficient if a persistent, unjustifiable course of conduct on the part of the husband, necessarily rendering the life of the wife miserable, be shown.

[Opinion filed May 20, 1892.]

Appeal from the Circuit Court of Marshall County; the Hon. T. M. Shaw, Judge, presiding.

Messrs. Winslow Evans and Fred. S. Potter, for appellant.

The public is always a third party to all suits involving the family. The interest is the same though it involve a separation, rather than an absolute divorce. It often happens that a husband without a wife, or a wife without a husband, is a greater menace to the welfare of the public than are those who are divorced. In all such cases the chancellor is the representative of the public; it is his duty to see that the family be not dissolved or separated for any light or trivial cause. Bishop, Mar. Div. and Sep.; Houts v. Houts, 17 Ill. App. 439; Vignos v. Vignos, 15 Ill. 186.

Another fundamental principle of the law is, that one who furnishes necessaries to a wife living separate and apart from her husband, must show, among other things, that she is living so for some cause justifying a divorce, either in itself, or by .repetition or continuance; failing to make such proof, he can not recover. 1 Bishop, Mar. Div. and Sep'n, Sec. 1217; Rea v. Durkee, 25 Ill. 503; Schnuckle v. Bierman, 89 Ill. 454.

This statute is intended to give to the wife an action in her own name, for what others might supply her under the same circumstances, but it contains no evidence of a legislative intent to give it to her for other or different causes nor upon less proof.

The separation of husband and wife is death to the home; it is a social wrong and a blight upon the body politic which should never receive judicial sanction except in cases coming clearly within the rules of the law, that a greater wrong may not be done or else continued, and then only upon satisfactory proof.

In this case the charge is extreme and repeated cruelty, a statutory cause for divorce.

The standard authors define legal cruelty to be either actual violence toward its object, endangering seriously life, limb or health; that it may be accomplished by acting upon the mind, but in such case it must be shown to have gone to the extent of reacting upon the bodily health; or some one or more of these causes and effects must be so imminent as to make it impossible for the victim to properly discharge his or her married duties. 1 Bishop, Mar. Div. and Sep'n, Sec. 1532 and n. 2; Henderson v. Henderson, 88 Ill. 248; Tureman v. Tureman, 4 Ill. App. 335 (5); Bates v. Bates, 11 Ill. App. 366; Harman v. Harman, 16 Ill. 90; Ratts v. Ratts, 11 Ill. App. 366; Vignos v. Vignos, 15 Ill. 186.

It certainly can not be claimed that the statutory words " without her fault" are any broader than the old provision, " causes for divorce not provided for by any law of this State." That provision was invoked in cases where the words spoken were such as to make the life of the wife miserable, and held not to be effectual in Birkby v. Solomons, 15 Ill. 120; Embree v. Embree, 53 Ill. 394; Coursey v. Coursey, 60 Ill. 186. Meaningless threats not intended to be executed and not understood by the wife as endangering her personal safety; vile, profane and abusive language toward her, or rudeness, harshness and bad temper, not in a manner and degree endangering her personal safety, health or happiness are ineffectual. 1 Bishop on Mar-

Seelye v. Seelye.

riage and Divorce, Secs. 1537 and 1556; Rea v. Durkee, *supra;* Ratts v. Ratts, *supra.*

Mental suffering from a source of misconduct must be shown to have affected the health of the complainant, or it is insufficient; nor is it sufficient that the husband is rude and dictatorial, even at times negligent when the wife is worn and weary; cruelty must proceed to the extent which the ecclesiastical courts of England justified as a cause of divorce from bed and board, before it will entitle a complainant to relief by a decree for separate maintenance. 1 Bish. Mar. Div. and Sep'n, 1563, 1603 and 1405 and citations; Hunter v. Hunter, 7 Ill. App. 253; Henderson v. Henderson, *supra.*

For a full exposition of cruelty as held by the English ecclesiastical courts, see Evans v. Evans, 1 Hag. Con. 4; Eng. Ency. of Law, 310 and 311; 1 Bish. on Marriage and Divorce, Sec. 1532, n. 2, gives it in full.

Messrs. T. F. CLOVER and BARNES & BARNES, for appellee.

Married women, who without their fault now live or hereafter may live separate and apart from their husbands, may have their remedy in chancery in their own names, respectively, against their husbands, for a reasonable support and maintenance while they so live, or have so lived, separate and apart. Starr & C. Stats. 1281; Johnson v. Johnson, 125 Ill. 510; Obrock v. Obrock, 32 Ill. App. 149.

" If the husband voluntarily does that which compels the wife to leave him, or justifies her in so doing, it may be inferred that he intended to produce that result, and the wife's leaving in such case would be desertion on his part and not on the part of the wife." Johnson v. Johnson, *supra.*

MR. JUSTICE LACEY. The appellee filed her bill in chancery against appellant seeking separate maintenance, alleging her marriage to appellant December 11, 1889, and cohabitation with him till October 17, 1890, when she alleges she was compelled to abandon him on account of unkind and

inhuman treatment of her, in that he was guilty of extreme and repeated cruelty toward her, so as to render it unsafe for her to live with him. The bill further alleges that he threatened to shoot her during the month of January, 1890, with a pistol, and on divers other occasions threatened the life of appellee by carving her with a knife.

The bill further charged that appellant was a man of violent passions and ungovernable temper; that on many occasions he addressed to appellee the most opprobrious epithets and threats of personal violence, and has threatened repeatedly to take her life; that in consequence of the cruel and inhuman treatment and threats aforesaid, and such conduct as to render it unsafe for her to live with or near him, that she, on October 17, 1890, left his house and took refuge with her friends, since which time she has not dared to return; that appellee was the owner of property, real and personal, to the amount of $75,000, and had an income of $5,000 per annum, and that she had no property. Upon answer being filed by appellant denying all the charges, the court submitted the case to a jury to find on the following propositions: First. Was appellee at the time of filing her bill living separate and apart from her husband without her fault? Second. Was the complainant on the 3d day of June, 1891, living separate and apart from her husband without her fault?

The jury in answer to these questions gave a verdict in the affirmative to both of them. The court then, after denying appellant's motion to set aside the verdict of the jury and for new trial, granted the relief prayed for, and after hearing evidence touching the station in life of the parties decreed the appellee $30 per month from October 17, 1890, to June 20, 1891, and the same allowance from and after October 20, 1891, until the further order of court, payable quarterly in sums of $90 each, and a further payment of $145 to appellee's solicitors for their fees in the case, making the decree a lien on appellant's land. From this decree this appeal is taken.

The appellant contends that admitting the evidence to be

Seelye v. Seelye.

true, it does not show cause for the relief granted, *i. e.*, it does not show a sufficient cause to justify appellee in living separate and apart from her husband. We are of opinion, if the testimony of appellee is to be believed and was true, then there was abundant cause shown for the living of the appellee separate and apart from her husband. In the first place the appellee appears to have been in no fault whatever. In accordance with the appellant's own testimony, appellee always demeaned herself in an affectionate and wifely manner toward him, always kind and striving to do her duty. She only at different times requested him to pay to one of her creditors $100, which she owed prior to her marriage with appellant, and which before her marriage he had promised to pay. Instead of paying the sum, as he should have done without a murmur, he got angry about it and refused. This request and refusal showed an honest spirit on her part and a breach of faith on his. Then within about a week after their marriage, simply on account of a little pleasantry on her part, he flew into an ungovernable rage, and cursed and swore at his wife, and refused to be pacified until a late hour that night, although appellee apologized to him and begged his pardon. No reasonable or sensible man would ever think of getting angry over so trivial a matter as being rallied about his "best girl," as was done by his wife in jest. Then on another occasion he cursed her and acted scandalously toward her because she had stayed out till about eleven o'clock at night, for which she gave to him a natural and reasonable account. Then on other occasions about the middle of February, the appellant requested his wife in the evening to read the Peoria paper to him, which she proceeded to do, but he seemed to imagine that she was not reading it but some other. After they went to bed he began to quarrel with her about her not reading the Peoria paper to him, she contending she was reading it. Thereupon he called her a liar, and grabbed her by the shoulders with both hands, and sprang out of bed, opened a drawer and grabbed a revolver, pointed it at her, cursed her and told her her life was not

worth a cent or his either. She screamed, and he then said, "G—— d—— you if you don't stop that racket I will put a bullet through you." The appellant kept up this cursing and abuse of his wife till one o'clock that night. The next morning on occasion of his wife telling him that the fire was out in the sitting room, he cursed her and shook his fists at her, and told her that he had waited on her long enough and said, "I will give you to understand that I have waited on you all I am going to." The appellee became frightened and fled to one of the neighbors. This was before breakfast.

Can anything be conceived of, more beastly and inhuman than for a husband without any provocation to treat his wife in such a manner as this? At the intercession of two of the neighbors, to whose houses appellee had fled for protection, she returned to him that evening, upon his promising to give up his revolver, which, however, he never did. Though she had a right to expect better treatment it did not come. About two weeks after, appellant fell into another violent rage, and cursed his wife for no provocation except her joking him about "winking and blinking at her like a toad in a thunder shower." About two weeks afterward he accused her without the least reason of putting concentrated lye in his victuals. He cursed and swore at her and told her she "was trying to kill him." Getting a telegram from his sick daughter in Iowa, he started there to see her. In his absence appellee left his home and went among strangers. After his return upon his promising reparation, she again went back to him to try and live with him. He treated her very well for about a week, and then became more abusive and violent and insulting to her than before, falling into a violent rage and abusing her. All this was without the slightest justifiable provocation. The appellee appears from the testimony to have been of a kind and amiable disposition, attending well to her household duties and trying to please her husband. Notwithstanding. this, appellant treated her in the most shameful manner, as above related. Appellee swears that she was in fear of

Seelye v. Seelye.

her life on account of his threats and the exhibition of his ungovernable and violent temper. He still kept the revolver in the drawer. The appellee never gave her husband, as she testifies, and it is not contradicted, a cross or ill natured word. Her testimony was in some measure corroborated by other witnesses, especially her account of being driven from home, the first time. The evidence, we think, is sufficient to show good reason for the living of appellee separate and apart from her husband. In fact she has been remarkably forbearing and persevering in her conduct toward and in trying to live with appellant. Her life has been made miserable by the threats and abuse of her husband. We also think that the jury were justified in believing as a basis of its verdict that the appellee stood in danger of her life. The appellant had once threatened to shoot her with a revolver in hand, and had accused her of trying to poison him with concentrated lye; was constantly violent and grossly abusive. What such a man would do no one can tell. While the evidence does not sustain all the allegations of repeated cruelty contained in the bill, we are of the opinion that enough of them have been proven to sustain it. It has been shown that he did on one occasion threaten to take her life, and that he repeatedly cursed her, and was guilty of inhuman treatment by his abusive words, and we think the jury were justified in finding that he was guilty of such cruel and inhuman treatment as to render it unsafe for her to live with him. By appellant's second instruction, given at his request, the jury were told : " If the jury can not say that they believe from the evidence that Seelye has conducted himself toward his wife in such a manner as to render her life miserable if she remained with him, they should find for the defendant;" and the same thing was submitted as a cause, with other causes, for the verdict for appellee in appellant's first given instruction. The jury were not confined by these instructions to any specific allegations in the bill, but were referred to the proof. Hence, appellant can not complain of a similar alleged fault in appellee's fourth instruction.

The third of appellee's instructions was not erroneous in not submitting appellant's fault as a hypothesis. There was not a particle of proof of any fault on her part justify-ing appellant's conduct toward her.

It appears from Wahle v. Wahle, 71 Ill. 516, it is not necessary that there should be statutory grounds for divorce in all cases to authorize a decree of separate maintenance in favor of the wife, that is, to justify her in living separate and apart from her husband. But it is sufficient " if a persistent unjustifiable course of conduct, necessarily rendering the life of the wife miserable " exists. In the bill there was a general charge that appellant was guilty of " such conduct as to render it unsafe for her to live with him." The appellant denied this categorically in his answer, and asked for no more particular specification of charges.

We think no material error exists in the record, and that the decree of the court below was fully justified by the evidence.

The decree of the court below is therefore affirmed.

*Decree affirmed.*